To the Honourable Col. Robert Daniell Esq. Deputy Governor and to the rest of the true and Absolute Lords Proprietors Deputies now Sitting in Chancery.
Humbly Complaineing sheweth unto your Honours Your Orator William Hawet of [blank] in Jamaica in America Merchant that he your Orator haveing diverce parcells of Land and Plantations in South Carolina and a great Number of Negro Slaves And great quantities of Stock of Cattle with Houses out Houses and other necessaries For employing the said plantations and more particularly your Orator has a Plantation there called Thorrowgoods well Stock with Slaves Cattle and other necessaries And your Orator further shew-eth that about the year 1704 one John Lancaster [torn] Elizabeth his wife now the wife of Thomas Moore of [torn] in South Carolina Gentleman in this province being then in Jamaica and they being unsettled in the World and your Orator being minded to doe them Some Service promote them the said Elizabeth being a near relation of his Wives and without any other inducement did propose to Send them to this Province to look after some Affairs of his and in Order thereto did enter into some Articles or writing of Agreement purporting that if the Said John Lancaster and Elizabeth his wife would with all Expedition goe for South Carolina aforesaid and undertake the Management of the said plantation called Thorrowgoods and the care of the Negroes and Stock and Improve the same to the best Advantage and Live on the Same For the space of Seaven Years to Commence tenn days [torn] Arrivall of the said John Lancaster and his takeing possession of the Farme called Thorrow-goods [blank] And your Orator further Sheweth that the said John Lancaster Dyed att Sea between Jamaica and Carolina in his voyage so could not perforate the said Contract which thereby became Voide and the said Elizabeth his wife now wife of the said Thomas Moore after her Arrival utterly declined taking any possession or intermedleing with the said Plantation not being capable That in the said Agreement there is some Clause or Article mentioning or intending that in case the said John Lancaster should dye in the Seaven years management of the said Plantation After possession taken your Orator was pleased to mention that for a Provision for the said Elizabeth And Such *164 Children she [torn] being a young breeding Woman that she Should be allowed [torn] Hundred Pound per Anno Carolina Money well knowing she was not fitt of her Self to Manage Such a Concern which was alsoe free and Voluntary and without any Consideration but thereby hoped the Said John Lancaster and the said Elizabeth would be induced to take the more care of your Orators Affaires to Improve them But Your Orator hopes and is Advised that the said John Lancaster so dyeing before entry or possibility of doeing any Service or improveing his said Farme and the said Elizabeth refuseing and neglecting after on her Arrival so to doe or to Intermeddle shall not be compel-lable in Equity to performe any Such Agreement or voluntary promise And your Orator further Sheweth unto your Honors that [torn] Elizabeth Lancaster now Moore wrote to Ja-[torn] your Orator [torn] she would not Inter-meddle with Such Concern but goe about her own Affaires she att that time haveing no charge heveing but one Child which she left with your Orator att Jamaica and he has maintained ever Since but your Orator being minded to doe Something for her did joine her in a power with Landgrave Thomas Smith in the Joint management of the said Farme and writ her Word he would allow her thirty pound per Annum and her maintenance out of the said Plantation And she afterwards did goe to and enter on the Same and had her Support and Maintenance out of the same and had Command of all the Negroes and Stock on the Same and Sometime after intermaried with the said Thomas Moore about the year [blank] and [torn] He the said Moore or the said Elizabeth seeming to be unsatis-[torn] Orator proposals of a new Agreement which your Orator consented to and the said Moore and his wife enjoyed and possessed the said Farme and the produce of his Servants Labour and Stock and did Send over some uncertaine Accounts of profitts and Disbursements and charges but never returned your Orator one penny of the Encrease or profitts of the said Farme during the Terme of [blank] yeares they were in possession therefore and during the said time the said Defendants were never easy but still made proposals of new Agreements and cancelling the old which continue-ing for soe many yeares and by Letters your Orator being an Aged man has lost or Mislaid and can nott sett forth the particulars and dates otherwise could f[torn] this Honourable Court that the said Thomas Moore and Elizabeth [torn] great Sumes of Money out of his said estate more than their demands pr just dues for as your Orator has been Informed and hopes to prove that the said Elizabeth during her widdowhood and the said Thomas Moore and Elizabeth his wife after their Intermarriage and during their abode on your Orators said Farme did convert Severall parts of the Increase or produce thereof to their own private use or uses as of Corn Cattle and by hireing out your Orators Slaves which your Orator on the hearing of this Cause hopes to prove Amounted to a Considerable Sume of Money which to the best of his remembrance was never inserted in any of their Current Accounts they never as yet having come to any Generali Accounts of receipts profits and Dis[torn] But *165 now soe it is may itt please your Honours that [torn] and Elizabeth his wife taking the Advantage of the Infirmity of Your Orators Age and incapacity to doe his business himself but to leave itt to Strangers and that in all possibility the Letters of Agreements made at various times with the said Elizabeth whilst sole and with the said Thomas Moore and Elizabeth after Marriage must by that meanes be lost or mislaid and forgetting the extraordinary kindnesse shown by your Orator to the said Elizabeth have of late sett up the said first Agreement herein before sett forth Altho void in it Self and demand £1100 or Some other great Sume of your Orator thereon and sometime Since Caused his Negroes on the said Plantation to be Attached for such moneys and Compelled your Orator to put in Bail to [torn] unreasonable and unjust Demands and goe on with Such [torn] at Common Law and give out in Speeches they shall gett Judgment on Such Account and so Seize your Orators said estate att Thorrowgoods for the Same and his said Negroes knowing your Orator lives att so great a Distance from this Province and that the Witnesses who could prove all and Singular the Allegations herein before set forth are either dead or gone into States remote and beyond the Seas so that your Orator cannot have the benefit of their Testimony on any tryal to be held att Common Law doe Combine and Confederate with diverse Persons to defeat and defraud your Orator of soe much Money which should they recover — would tend to the ruin and destruction of your Orators Family whom when discovered your Orator prayes may be made partyes to this bill with apt words to charge them In Tender consideration of the premise [torn] your Orator is only releivable before your Hon-ours in a Court of Equity [torn] Orator well hoping the said Moore and his wife and the rest of the Confederates when discovered will on their Oathes discover the truth of all and Singular the premises and allegations before al-ledged to be true on their Oathes when examined in this Honourable Court and particularly whether the said John Lancaster and your Orator did not come to Such Agreement to the purport afore set forth at Jamaica on what Consideration was the same made that soe large benefits were given above usual did the said John Lancaster Live to make any Entry on the said Farme pursuant to Such Agreement if not for what Reason the Defendants made Such unreasonable Demands if the said Agreement is as afore set forth or if any other tenor and effect and what whether the Defendant Elizabeth after her Arrival did take possession [torn] Farm of Thorrowgoods and when and whether she did not [torn] thereof send word to your Orator and if soe why she is soe unreasonable to insist ask or Demand any Such allowance of one Hundred Pounds per Annum when the said Lancaster did not dye in the said Terme of Seaven Years the same haveing never been Commensed whether your Orator has not kept her the Defendant Elizabeth only Child ever since att his own charge whether your Orator did not after her Arrivall and soe refusing to look after his Affaires in this Province to provide for the said Elizabeth join her in a power to Act in Conjunction with [blank] Smith and Let her live on the said *166 Plantation whether it was not by her Request and on a new Agreement whether your Orator did not send her word he would allow her thirty pounds a year or some Such Sume and what Sume for her Care and thereon she did goe and Live att the said Farme and had her Maintenance soe long what time she Intermarried with Defendant Moor whether he and she [torn] propose new Matters and Agreement to your Orator if soe of what purport tenor or effect was such new proposed Agreement or whether he disagreed if soe in what point or whether the said Thomas Moor and Elizabeth his wife did come to any Agreement and what whether he and she did not Enjoy the said Farme or Plantation called Thorrowgoods with the Negroes Cattle and encrease and on what Consideration if soe for how Long and what they Annually made thereof each year how many Slaves was there on the said Plantation when they took possession thereof And how long they enjoyed it whether they ever Remitted your Orator any part of the Produce of the Labour of his Slaves or of the Land or encrease of the Cattle whether they the said Defendants did not Seem uneasy under such last mentioned Agreement and propose new Agreements and how often [torn] their abode att Thorrowgoods with the Times contents of each proposed Agreement whether they did not Send Letters to your Orator of such their demand what date Such Letters bore and by whom Sent whether the said Elizabeth during her Widdowhood or the said Thomas and Elizabeth since their Intermarriage did not make Severall private Advantages of the said Slaves Stock Cattle And their produce then mentioned in Such Accounts Currants if soe how much each year and in what particular and why they have not made up a Generali Account that your Orator might have some Satisfaction of their Agency and be able to Inspect into the Errors thereof and why they take Advantage of your Orators Infirmity of old Age to disturb him and Intails Law Suits on him on Such void unperformed Agreements on their parte for a [torn] Answer all and Singular the p[torn] forth as if herein again [torn] May itt [torn] to grant unto your Orator the Writ of Subpoena to be directed to the said Thomas Moor and Elizabeth his wife and other the Confederates when discovered may Personally be and appear before your Honours in this Honourable Court at a certain day and under a Certaine payne thereon to be Limmitted and on their corporal Oaths to Answer all and Singular the premises aforesetforth and alsoe the writ of Injunction to be directed to them the said Thomas Moor and Elizabeth his wife their Counsell Agents Sollicitors and Attorneys requiring and Commanding them to stop all proceedings att Law on the said Action att Common Law untill the Hearing of the [remainder lost].
To the Honourable Col. Robert Dannell Governor of South Carolina The Humble pe[ti]tion of William Hawet Merchant of the Island of Jamaica.
Sheweth that your pe[ti]tioner is unjustly vexed at Common Law by Thomas Moor and Elizabeth his wife on account of articles formerly entered *167 into between Jhon Lancaster deceased and your pe[ti]tioner which the said Lancaster never lived to perforin he dying at sea yett the said Thomas Moor prosecutes your pe[ti]tioner for the performance of his part and the witnesses that would prove the permisses are Dispersed so that your petitioner cannot have their testimony viva voce att Comon Law wherefore your petitioner is flewing for refuge into the Court of Chancery where he may have the Benifitt of their Evidence by Comission and humble prays an Injunction to stop all proceedings at Law his bill being field and your petitioner shall ever pray.
[South Carolina Filed this 7th day of March 1716 (1717).]
Will. Hawett
November 9, 1716.
The Above Petition is Granted Robt. Daniell.
The answer of Thomas Moore and Elizabeth his Wife, Defendants, to the Bill of Complaint William Hawett of Jamaica Merchant Complainant.
These Defendants saving and Reserving unto themselves all and all manner of advantages and benefit of Exceptions which may be had or taken to the manifold uncertainties and Imperfections in the Complainants said Bill of Complaint contained, for Answer thereunto, . . . say That true it is, That the said William Hawett . . . was possessed of . . . Thorrowgoods with several Negroes, Cattle, and other necessaries belonging to the Same . . . about 12 or 13 working Hands belonging to the said Plantation, and that one Birde might have on another Plantation called Long Point, about 8 or 9 Working hands more, which he held by Lease from said Hawett for about 7 years, 4 whereof were expired when the said Elizabeth arrived in this Province, But as to that part of the Complainants Bill whereby he chargeth that John Lancaster . . . and this Defendant Elizabeth being then (vizt.) about the year 1704 at Jamaica, and unsettled in the world . . . Elizabeth answereth and Saith That the Said Hawett sent for this Defendant from her native Country England, promising to provide for her during her life, That her former Husband John Lancaster was a person of very good Skill and knowledge in Surgery and Physick, and soon after his arrival in Jamaica had very considerable offers made him by the Inhabitants to stay and Settle in the said Island (vizt) That they would build or provide for him an handsome House, and Horses and Negroes at their own charge, and many other advantagious offers, which this Defendants Husband, the said John Lancaster consented to, till the said William Hawett, by frequent and continual persuasions prevail’d on her said Husband and this Defendant to come to look after his the said Hawett’s Affairs in Carolina, But the said Lancaster did then before he would accept . . . tell the said Hawett, that his Wife this Defendant was a sickly, weakly and helpless Woman, and that if he the said Lancaster should happen to die in his voyage, or soon after ... his Wife .. . would be left in very miserable Circumstances, and ... he would not undertake such a Voyage unless the said *168 Hawett would agree to Settle an Annuity on his Wife, in case of such accident, and that thereupon by Articles of Agreement bearing date the 23d day of August 1704, and made between . . . William Hawett of Port Royal in Jamaica Esq. of the one Part, and . . . Doctor John Lancaster and Elizabeth his Wife ... of the other Part, It was agreed That the said John Lancaster, and Elizabeth his wife, within ten days after their arrival in Charles Town . . . should take into their Possession . . . Thorrowgoods, to live there for the term of Seven years . . . And after the expiration of said Bird’s Lease, then to take into their possession the other part of the said William Hawett’s Estate . . . And it was agreed . . . William Hawett should have the one part of all the produce . . . and Lancaster and Elizabeth the other half part thereof, That is to say, Half the Rice, Pease, Corn, Butter, Cheese, Calves, Hoggs, Lambs and the half part of all the Negro Children that should be born within the Term of seven years aforesaid with Liberty nevertheless for the said Hawett (if he was so minded) to have the said Negro Children according to their value or Appraisement And that the said Lancaster and Elizabeth his wife should look after the said Negroes in Surgery and Physick, and it was further agreed . . . That Doctor John Lancaster and Elizabeth should pay one half part of the charge of all that should be laid out for the Plantations use, Except Negroes, Quit-Rents and Taxes for Lands, and likewise one half of the Negroes Cloaths, Shoes, Howes, Bills, Axes, Plows, Harrows, Casks, Freight, and all manner of Charges where the said John Lancaster and his Wife should have and receive any benefit by it, And that the said John Lancaster and the said Elizabeth Should at no time employ any of the said Negroes on any other Ground whatsoever, except on the Lands of said Hawett, during the said Term, And Lastly it was agreed by the said Articles . . . That if it should so happen, That the said Elizabeth Lancaster should decease or die before the end of Seven years be compleated, That the said Articles should continue in the same full force . . . But if the said John Lancaster should die or expire before the term of Seven Years should be ended, That then the said Elizabeth Lancaster should have one hundred Pounds Current Money of Carolina paid her Yearly, during her natural Life, That is to say, at the end of every 3 Months to pay her £25 by the said William Hawett, his Heirs, Executors, Administrators or Assigns, As in and by the said Original Articles, under the hand and Seal of the said William Hawett, in these Defendants Custody, and ready to be produced to this Honourable Court, and duly proved and Recorded in the Secretary’s Office of this Province . . . the said Contract could not become void by the said Lancaster’s Death, as the Complainant by his Bill doth allege, for that this Defendant could no ways become Intitled to the Annuity of £100 per Annum but by the Death of her said Husband . . . True it is . . . That She was not fit of her Self to manage such a Concern, and therefore this Defendants Husband . . . did insist said Hawett should Settle a certain Annuity on his said Wife, in case of the said John Lan-i *169 caster’s death, before he would undertake said Voyage, and thereupon said Hawett proposed himself the said £100 per Annum And humbly conceives tho’ the Consideration of the said Annuity is not so very plainly expressed in .the said Articles of Agreement the same not being drawn up by an expert Lawyer, yet . . . are very plainly Implied, sufficient to ground an Action at Law on the same, and will much more be so esteemed to be well and sufficiently implied in a Court of Equity, And for that all Deeds, both in Law and Equity shall always, be taken most strongly against the Grantor, and for the benefit of the Grantee, Does not know but this Defendant Elizabeth might refuse to manage the said plantation for some time after the decease of the said Lancaster, . . . And this Defendant Elizabeth conceives, That by those words . . . That if it should so happen that the said Mrs. Elizabeth Lancaster should decease or die before the end of Seven years be compleated and ended, that the said Articles should continue in the same force and power etca. Do seem to imply that this Defendant Elizabeth was only intrusted with the Joint Management of the said Plantation, during the Life of the said John Lancaster, and that the said Hawett, at the time of executing said Articles, and afterwards, as appears by the Plaintiff’s own Shewing, did not think this Defendant sufficiently qualified to manage the Same, says, True it is, That this Defendant Elizabeth left her Child at Jamaica, and that said Hawett and his Wife, this Defendants Sister have maintained her ever Since, But says, that the same is quite contrary to this Defendants Desire or Inclinations, and very much to this Defendants dissatisfaction, that She cannot have her only child with her here, in this Province, and that her Child should be kept from her by force, and after having writt so frequently to have her only Child with her, to no purpose, This defendant Elizabeth was forced to take a voyage to Jamaica, and finding no ways to bring her away, offered the Woman that looked after her, a hundred Pounds to assist her in conveying the said Child [50] on Ship Board, but could not prevail, the Grief whereof has brought on this Defendant Hysterick Fits, and great Melancholy, and divers other distempers, as she verily believes, So That sometimes she is almost besides her Self, Says, That Landgrave Thomas Smith in the Bill named, was Attorney to the said Hawett before She arrived in this Province, And believes the said Landgrave might act by the same Power for a year afterwards, or therabouts And says, that during the time the said Land-grave Smith had the Management of the said Plantation, the said Plantation was brought in debt, for that Rice at that time (vizt) about the year 1704. was not as She remembers, above 10 s per hundred, and Says that this Defendant writing to her Brother, the said Hawett that She intended to go to England, to her Relations, who were in good circumstances, and would provide for her, the said Hawett writ her a Letter, that he should be a Friend to her ere long, *170 That he had put her in a power of Attorney with Landgrave Smith, desiring her to live at Thorowgoods, and there be Mistress for several years, to have her Washing, Diet, and Lodging, and cost her nothing, and allow her £30 per Annum till the Estate enceased, and then her Salary should encrease, and this Defendant Elizabeth further answering, says, That She believes the Complainant had no design of abridging her of the said Annuity of £100: but that the said Estate would not answer the Same, for that it appears by the said Hawett’s Letters, that her said Brother Hawett intended to do her far greater Acts of kindness than barely the said Annuity, as appears by his Letter to this Defendant of the first of April 1706. in these words.: I have read in one of your Letters, you tell those that come with an Intent to have you, and all you have, That the Estate is not yours, nor never like to be, But I say, God forbid, That one half should not be yours for ever, if not the other half too in time,- — -Therefore my good Sister, you need not go no further for an Estate, if please God the Country does prosper, and does well, my Wife and I have been Discoursing about it, and She is more willinger that you think, for your good, which I am very glad of It, And in another part of the said Letter, Sister, I would have you get a good white Woman to keep you company, and charge it to my account, And again, Sister, if you doubt your Self at any time, to get some- honest man if you can, to take care of what you and I have there, And this Defendant says, that being willing to serve her Brother, to the utmost of her capacity, in the year 1705 did consent to Act in the Joint power with the said Landgrave Smith, but had nothing for her Pains and Trouble, save her bare Living on the said Plantation, for that the said Landgrave Smith had the chief Management of the Same, and the said Plantation was greatly indebted to the said Land-grave Smith, Rice being then s8/dg or 10s per Hundred, and Tarr 7/6 per Barrel or thereabouts, Says, That such part of the Crop or Produce as came to her, this Defendants hands, this Defendant Shipped off to Jamaica, (Vizt) Nine Barrels of Beef per Capt. Arthur Hall, and 4 Barrels of Tarr, and 4 Barrels of Rice by Capt. Christopher Hall, the Receipt whereof the said Hawett acknowledges by his Letter dated the 1st April 1706. And by the same Letter acquainted her, that he had sent her a Power of Attorney to take all his concerns out of Landgrave Smith’s hands, and to get some body to assist her, or hire some body, as She should think fit, which Shews that this Defendant was not sufficiently qualified to take that trouble upon her self Says, That some time about the same year 1705. the said Hawett sent over Articles of Agreement executed by the said Hawett, whereby the said Hawett was to allow one half of the neat produce of the said Plantation, And a Counterpart of the said Agreement for her to execute, but this Defendant the said Elizabeth never executed any Counterpart of said Articles, and if this Defendant had so done, the same had been no Bar of her said Annuity, having no Referance thereto, nor any ways mentioning, or intended that this Defendant knows of, to be in lieu and satisfaction of the Same, But says, that this Defendant at her said *171 Brothers Request, and being willing to act according to the best of her power, to serve her said Brother, did continue in the possession of the said Plantation called Thorowgoods, and some time about the year 1706. She intermarried with the other Defendant Thomas, and both these Defendants say they used their utmost endeavours to manage the Same to the best advantage and believe the neat Produce of the year one thousand seven hundred and six over and besides what these Defendants Remitted to said Hawett did not pay the charges and Debts, and Tax Raised for defraying the charges of the French and Spanish Invasion, and St. Augustine expedition, and which were paid by Order of said Hawett, That these Defendants made Remittances to the said Hawett by Capt. Spread, together with Bills of Lading and Accounts that year, with which the said Hawett was intirely well satisfied, as appears by his Letter in February, in the year aforesaid in these words, These may acquaint you I Received Several Letters from my Brother Mr. Thomas Moore, in Capt. Hall and Capt. Spread, with several Bills of Lading, and Accounts likewise, for which I return him many thanks for the same, and by the same Letter acknowledges the Receipt of all the Bills of Lading make mention of, but blames the Defendants for not taking Bills of Lading for some Presents sent the said Hawett, which he says were all lost, for want of taking Bills of Lading, And these Defendants say, That likewise in the year 1707. and 1708. they remitted the said Hawett the Balances of his Accounts after deducting thereout the Moiety of the neat Produce, which he thinks he deserves for his Trouble, which Accounts and Bills of Lading this defendant has not been so careful as he might have been, not imagining to be questioned about the same, after he had Received Letters of Thanks from said Hawett no longer ago than 1712. Says that in the year 1709. there was a General Blast, and this Defendant could not make a Crop, nor would the Produce answer the charges that Year, Believes Mr. Joseph Garratt, the said Mr. Hawetts Attorney, has the Accounts now in his Custody, for that he had them long enough in his Custody since this Suit was commenced, to wit, about December or January last whereby it will appear there is near £45. due this Defendant on Balance of said Accounts (and which were never as yet paid to this Defendant) and hopes the Court will compel the said Hawett to produce them, if need be, Says, That some ill disposed Persons did write to said Hawett, That this Defendant had managed his Affairs very much to his prejudice, at which the said Hawett, or his Wife were for some time disgusted, but this Defendant after having writt said Hawett some Letters on that occasion, said Hawett writt these Defendants a Letter dated the 4th April 1712. in very Friendly Terms (Vizt) These may acquaint you both, I Received your Letters one from my Brother Moore, the 11th February 1711/12 bearing date the December 31st 1711. Enclos’d in one of my Sisters and by Capt. Joseph Viall, and another sent by Capt. Wright, bearing date the 12 th day of January 1711/12 And also another bearing date the 6th March 1711. And for which I return you ten Thousand Thanks for the Same, And now I *172 write you both News, That my Wife is at Peace, and great Friends with you both, being inform’d the Truth how things were, etca. And these Defendants farther Answering say, That the said Hawett about May or June in the year 1710. fancying he could have his Plantation better managed by other hands, sent over a Power of Attorney to Col. Hugh Grange to manage the said Plantation, And these Defendants further Answering say, That all the Moneys, or Moneys Worth Receiv’d by these Defendants on Account of said £100: per Annum was £50 per Annum for 3 years and a quarter from Col. Grange and Capt. Benjamin Schenckingh (who was Joyn’d in the same power with Grange, but did not act till after Grange’s death) together with the use of Two Negro Women, and one Negro Boy, Ten Cows, and Corn for said Negroes, all Gratis, which these Defendants suppose the said Hawett computed at £50: per An-num more, which makes £325. and which these Defendants are willing to allow, but hopes this Honourable Court will never oblige these defendants to allow what they were to have for looking after the said Plantation, which never amounted to £100: in the whole, as part of the said Annuity, having no Manner of Reference or Relation, thereunto, And these Defendants further say, That said Grange, about Two years after he took the Management of the said Plantation, died, But the said Grange before his death, bringing the Plantation yearly in Debt, and sending no Remittances to said Hawett, and being willing to give up his Attorneyship, the said Hawett and his Wife would fain have had these Defendants to take the Management of the said Plantation again, and to that purpose sent over new Proposals of Agreement under their hands and Seals, and written by the said Hawett himself, bearing date the 10th of May 1712. with a Counter part for these Defendants to execute, by which Agreement they covenanted to allow these Defendants half the Produce, etc. except Negroes and Cattle, and also a Power of Attorney, and desired the Defendants would please to accept of said Articles, And the 30th of May following sent a Letter to these Defendants That if they did not like ’em, for Defendants to make Articles, and send them, and in order to induce them to accept the said Articles, did tell ’em they might make Bricks, that there was a good place, and that they should have half the Bricks, that these Defendants might make a good estate for themselves, and other Arguments to induce them thereto, and desiring Defendants to pay Col. Grange’s Demands et. for that Col. Grange had writt ’em to employ some body in his Room, which these Defendants hope make it sufficiently appear to this Honourable Court, that if the said Hawett had been dissatisfied with these Defendants former management the said Hawett would never have pressed these Defendants to take his concerns again into their hands, But these Defendants did not execute any Counterpart of said Agreement and refused to act any farther therein, and this Defendant Elizabeth says that thinking it might be most for said Hawett’s advantage, she hired out said Hawett’s N egroes at £ 100 per Annum clear of all charges, to one Mr. James Lawson, for which Defendants gave credit to said Hawett’s Ac *173 counts and out of which Defendants paid themselves part of the said £150 herein before mentioned to be receiv’d by them on Account of said Annuity, And these Defendants deny they have made any other advantages from said Plantation or Negroes than what they (Except three Steers sold by those Defendants which they believe were omitted by Mistake, to be charged, the Current Price of said Steers being then 35s. or 40s. per head) have accounted for already fairly and honestly to said Hawett, and deny that any the agreements or proposals aforesaid were these Defendants agreements or Proposals, but Still the proposals or Agreements of said Hawett, and deny that these Defendants or either of them, ever released or discharged the first herein before recited Articles of Agreement for allowing to the said Elizabeth the said Annuity or Sum of £100 per Annum in case of the said Lancaster’s death, as aforesaid or that ever the said Hawett proposed, desired, or insisted that these Defendants should release or discharge the said Articles of Agreement to the knowledge or Remembrance of these Defendants or either of them, And this Defendant Elizabeth further Answering saith, that about November 1714. there being considerable Arrears of said Annuity due to her from said Hawett and having no security for payment of the accrewing Arrears, she this Defendant went from hence to Jamaica, in order to settle the matters aforesaid with said Hawett, all Accounts Relating to the said Plantation being before that time Setled, and £40. and upwards due to these Defendants And to get over her Child, But as soon as one Jasper Ashworth,[51] the Defendants Nephew, and some others who had a Dependency on said Hawett’s Estate, had heard of her this Defendants Arrival, they appeared mightily Chagreen, and set all their Engines at work to defeat the designs of this Defendant And for that purpose set one Mrs. Pearce, then living at said Hawett’s, in the way to meet this Defendant Who came running to this Defendant in the Strangest Seeming Surprise imaginable, Crying Mrs. Moore, For the Lord’s Sake, don’t go nigh the House, for your Sister Swears she will Murder you, if you offer to Set your Foot within the Door, or words to that effect, She is most Grievly exasperated at your coming to Jamaica, and as for your Brdther, there’s no possibility of ever your coming to speak with him, This Defendant says that being under some confusion at this Treatment, deferr’d going to see her Brother and soon after was followed by Jasper Ashworth, who introduces his discourse, that he was very glad to see her, but that his Uncle and Aunt were very much incensed at her coming to Jamaica, but however he guessed at her Errand, and understood she had brought her Papers and Writings, and that if she would Sink the Papers and Letters, he would pay her down One hundred Pounds Jamaica Money, which he pressed her to accept of, but as for seeing Mr. Hawett, there was no Possibility of that, nor would he advise her to insist on it, But this Defendant answered, she un *174 dertook the Voyage on Purpose to settle Affairs with her Brother that she would not accept o£ his Hundred Pounds, that she grew ancient and Feeble, and wanted the said Annuity to be better Secured, in case of her Brother’s. Death, that She would never believe her Brother, who had show’d her so many Acts of kindness, could be averse to see her, and that she would go and get an Order from the Government to have access to her Brother. And when the said Ashworth found this Defendant resolute, he desir’d to know what it was She would have done for her, And this Defendant answered, She wanted nothing but her own; whereupon the said Jasper Ashworth, who then had the Management of her said Brothers concerns, told this Defendant he would give order that for the future she should be taken better care of, And for that end writes to Mr. Garrett, the said Hawett’s Attorney, who now carries on this Suit, in these words, Mr. Garrett, My Uncle’s Orders are, that you admit my Aunt Moore to dwell in the house, and have the Bed and Furniture She had when there before, and to have the Ten Cows, and Ground Sufficient to keep the Same, and to allow her £50: per Annum at Twelve Pounds Ten Shillings the Quarter, and to deliver up the Plate you had of her, which is likewise the desire of your humble Servant Jasper Ashworth Porte Royal February 15: 1714/5 as by the said Letter, now in these Defendants custody, ready to be produced to this Honourable Court, appears, And this Defendant finding She could not get at Speech of the said Hawett, without making a great Deal of noise and Stir tho’ she had waisted 2 months together for that purpose, but could find no opportunity, and apprehending the said Jasper Ashworth’s Order would be complied with he having then the Ordering and Management of her Brothers concerns, she Return’d from Jamaica to this Province, But the said Garrett never complied in the least with the said Order, having as this Defendant believes, the said Ashworth’s private Orders to the contrary; That soon after one Leigh Ashworth, another of the said Hawett’s Nephews, arrived here in Carolina, and pretended abundance of kindness to this Defendant Elizabeth That She should not be wronged, and abundance of Fine Stories, and at the same time went and Feed Maj. Evans and M. Rodd to oppose any pretensions that She this Defendant might have to said Annuity, or the Moneys Ordered to be paid her by said Ashworth, nor is it possible that this Defendant by her Self, or Letters can have access to said Hawett, being more carefully and watchfully guarded by his Dependants than the Golden Fleece; Thus Misc.ably and deceitfully has She this Defendant been Dealt with, and Handled by her Nephews, and other their Confederates who have endeavoured by all their Artifices, to incense her Brother against her, and to hinder him from doing any thing for her in his Life time, or at his death, but to Engross the whole Estate of the said Hawett into their Hands, That these Defendants Patience being at length quite worn out, and having no hopes or expectations by the death of said Hawett, being, as She is inform’d, left out of his Will, through the Instiga-tions of her other Relations, She this Defendant has therefore with her Hus *175 band, caused the said Hawett’s Negroes to be Attached, in order to recover the Arrears of her said Annuity, which this Defendant is advised by her Council is Justly due to her, both in Law and Equity; But these Defendants say, they are willing to allow the said £325. or any other Accounts the Complainant or his Attorney can bring against these Defendants for any matter Received by them out of said Hawett’s Estate, not already accounted for, if any such the Complainant can make appear, and are ready to account before the Master, as this Honourable Court shall direct, and humbly hope this.Honourable Court will not only decree the Arrears of the said Annuity which shall be coming to these Defendants on Setling said Accounts but also that said Hawett shall give Security for the Payment of said Annuity for the future, quarterly, as is agreed on by the said Articles, And that these Defendants shall not be compelled to commence fresh Suit as often as the same shall become due; and these Defendants say that they cannot give in any other Account relating to the Transactions or Managements of the said Plantation than what they have already given in to said Hawett, having lost the Duplicates of said Accounts Those Defendants not imagining it any ways concern’d them to keep them by ’em, after these Defendants have Transmitted said Accounts to said Hawett, and Received Thanks for the same, with Letters of Intreaty to take the Same Plantation again into their hands, And for that these Defendants have had no Transactions or dealings with said Hawett ever since the year 1709. And the Plaintiff is long since barred both at Law and in equity, by the Statute of Limitations, to have any demands of such Accounts from these Defendants but these Defendants are willing to allow the said £325. Received by Defendants on Account of said Annuity, and to abide by the Accounts in the hands of said Garrett, or to make any other Allowances the said Complainant can make appear to have been Received by Defendants not accounted for already, And lastly these Defendants say they cannot give any further or other Answer than what they have already herein before declared Without that any other Matter or thing in the said Complainants said Bill of Complaint contained material or effectual in the Law for these Defendants to make answer unto, and not herein or hereby well and Sufficiently answered unto, confessed or avoided, Traversed or denied, is true, all which Matters and things these Defendants are, and will be ready to Justifie, maintain and approve as this Honourable Court shall award, and therefore humbly pray to be hence dismissed with their reasonable Costs and Charges in this behalf most wrongfully sustained.
Allein pro Defendants.
Sworn the Seventh day of March Anno domini 1716 [1717] Before me.
Chas: Hart Magisr. Cancell.
Exceptions taken to the Joynt and Severall Answers of Thomas Moore and Elizabeth his Wife Defendants to the Bill of Complaint of Mr. William Hewatt of Jamaica Merchant:
*176 The Scope of the Complainant’s bill is to sett forth the unreasonableness of the Defendant’s Elizabeth her insisting on the hundred pounds per annum granted to her by the Complainant on Such conditions which were never performed to Discover what new agreements were made between the Complainant herself and present Husband Thomas Moore, to obtain a generall Account, of the said Elizabeth and Thomas her Husband during the times he and she lived upon a Certain Plantation or farme belonging to the Complainant call’d thorowgoods in Berldy County in the Province of South Carolina in Order to Discover the means and Methods the said Thomas and Elizabeth took [torn] Defraud the Complainant of the Profitts of the said Plantation and require them to An[torn] to the severall particulars following.
[First] — Whether it was not agreed between the Complainant and John Lancaster that he the said John Lancaster the former husband of the Defendant Elizabeth Moore should take Posession of the said Plantation before the said Elizabeth could be intitled to the Annuity of One hundred pounds per annum.
[Secondly] — Did the said John Lancaster live to make any Entry on the said farme persuant to such agreement.
[Thirdly] — Whether the said agreement is as afore sett forth or of any other Tenour and Effect and what.
ythly] — Whether the said Elizabeth after her Arrivall did take Posession of the said Plantation, and whether she did not decline the same and thereof write word to the Complainant.
[jthly] — Whether the Complainant has not kept her Child at his own Charge ever Since.
[óthly] — Whether it was not by her own request and on a New agreement that shee was putt into a Power of Attorney with Landgrave Thomas Smith and Suffer’d to live on the said Plantation.
[ythly] — Whether the Complainant did not send her word that he would allow her thirty pounds per annum or some such Sume or what Sume for her care and if on that agreement she did not go and live upon the said farme and there had her Maintenance.
[8thly]- — How long She lived thereon.
[pthly] — What time she intermarried with Moore, and whether he and she did not propose new Matters and agreements to the Complainant, if so of what purport Tenour and Effect were such new agreements.
[iothly] — Whether the Complainant did not comply with such new proposed agreements or whether he disagreed, if so in what Point.
[j/] — Whether the said Moore and Elizabeth his Wife did come to any agreement and what.
[12] — How long the said Thomas and Elizabeth lived upon and enjoy’d the said farme with the N egroes Cattle and encrease and on what Consideration and what they annually made thereof.
*177 [jj] — How many Slaves were there on the Plantation when they took possession thereof,
[zy] — Whether they ever remitted Hawett any of the Product.
[zj] — Whether the said Defendants were not uneasy under such last Mention’d agreements and propose new ones and how often during their abode at thorowgood’s with the times and Contents of each proposed agreement.
[z<5] — Whether the Defendants did not send Letters to the Complainant of such their new Demends what Date such Letters bore and by whom sent.
[z7] — -Whether the said Elizabeth in her Widdowhood or both since their Intermarriage have not made severall private advantages of the Slaves Cattle etca how much each year and in what particular and why they have not made up a generall account.
[z5] — Why they take Advantage of the Complainants Old Age and Infir-mitys.
To all which the Complainant Saith that the Answer of the Defendants Thomas and Elizabeth Moore is insufficient and for Exceptions thereunto Saith that — • That to Quere the first their Answer is very Uncertain and Evasive they giving for Answer that the Defendant Elizabeth could not be entitled to the Annuity of One hundred pounds per Annum but by the Death of her said former Husband John Lancaster, but make no Answer to that part of the Quere which requires them to Declare whether the said John Lancaster was not first to take Possession of the said Plantation and dye in the management of it before she could be entitled to the said Annuity.
The Second Quere Answer’d.
The third Quere not Answer’d.
To the first part of the fourth Quere she makes Answer but to the latter part which would Discover Her possitive Resolutions of not intermeddling with the said Plan[ta]tion she makes no Answer at all.
The fifth Quere Answer’d.
To the Sixth Quere which nearly Concerns the Complainants bill she makes no Answer at all.
The first part of the Seventh Quere Answer’d.
The Eight Quere not Answer’d.
To the Ninth Quere which would Discover their coming to new agreements with the Complainant they make no Answer.
The Tenth Quere unanswer’d.
To the Eleventh Quere they Own Articles were sent them but say the[y] did not accept them.
To the Twelfth they Evade making any Answer.
The thirteenth Answer’d.
The fourteenth Answerd.
The fifteenth Unanswer’d.
Blakeway [52] pro Complainant
The sixteenth Unanswerd.
To the seventeenth they make no Answer at all.
The Eighteenth Quere unanswerd.
And Whereas the Defendants are required to Answer all and Singular the Premisses sett forth in the said bill the Complainant doth except in generall against their Answers they being uncertain Short and Triffling with this Hon-ourable Court and where they make particular Answers they are alltogether Evasive, Wherefore the Complainant humbly conceives that the said Defendant ought to give a more full certain and direct Answer concerning the matter aforesaid.

 Mary Lancaster, the child, received a legacy of £500 from William Hawett; she married Arthur Foster of South Carolina, gentleman (Miscellaneous Records, 1716-1721, Probate Court, Charleston, p. 60; Book B, Register of Mesne Conveyance, Charleston, p. 39).

 After the deaths of William Hawett and his wife Mary, Jasper Ashworth of St. George’s Parish, Jamaica, inherited the greater part of Thorowgood plantation; he and his wife Susannah conveyed it to William Gibbon and Andrew Allen, prominent merchants of Charleston (Book B. Register of Mesne Conveyance, Charleston, p. 39).